# IN THE COURT OF APPEALS OF IOWA

No. 23-0633
Filed January 24, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DONELL EDWIN SMITH JR.,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Michael J. Shubatt, Judge.

Donell Smith Jr. appeals his conviction for second-degree theft. **AFFIRMED.**

Martha Lucey, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant Attorney General, for appellee.

Considered by Bower, C.J., Tabor, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**DANILSON, Senior Judge.**

A jury convicted Donell Smith Jr. of theft in the second degree. He appeals.

## I.   *Background Facts*

Smith worked as a used car manager at a car dealership. One Saturday, a friend of his came in to purchase a vehicle with a $3000 cash deposit. The $3000 should have been collected by the dealership finance department and placed in a safe, but the money never made it into the safe. Instead, Smith put the cash in his pocket.

That evening, Smith and other dealership employees celebrated a coworker's thirtieth birthday with a party bus that started and ended at a casino parking lot. Smith arrived at the festivities in different clothing than he wore to work that day. But he still had the $3000 deposit with him. The following Monday, Smith confessed to a coworker that he had "lost" the money and that it was "gone." He claimed he was going to find a way to cover the missing funds and left work. After Smith failed to return to work by the afternoon, his coworker reported the missing money to the general manager.

The general manager sent Smith a text message stating Smith needed to return the $3000 to the dealership, and Smith responded that he would "do all that [he could] to make that happen." Smith replied to a follow-up text message from the general manager explaining, "I don't even know how I am going to find 3000. Look so whatever you guys need to do." Smith never returned the money to the dealership.

Smith was charged with one count of second-degree theft by misappropriation. A jury found him guilty. He now appeals, challenging the sufficiency of the evidence.

## II. Standard of Review

We review challenges to the sufficiency of the evidence for correction of errors at law. *See State v. Lacey*, 968 N.W.2d 792, 800 (Iowa 2021). "Under this standard, the court is highly deferential to the jury's verdict. We will affirm the jury's verdict when the verdict is supported by substantial evidence." *Id.* Evidence is substantial if it is sufficient to convince a rational person of the defendant's guilt beyond a reasonable doubt. *Id.* In making this determination, we view the evidence and all reasonable inferences that can be drawn from it in the light most favorable to the State. *Id.* The question is whether the evidence supports the finding the jury made, not whether it would support a different finding. *Id.*

## III. Sufficiency of the Evidence

When, as here, the defendant does not object to the jury instructions, they become the law of the case for the purpose of reviewing the sufficiency of the evidence. *State v. Mathis*, 971 N.W.2d 514, 518 (Iowa 2022). The marshaling instruction required the jury to find the following elements:

> 1. On or about the 13th day of April, 2019, the defendant had possession of or exercised control over money belonging to McGrath Auto in Dubuque, Iowa.
> 2. Defendant knew the money was owned by McGrath Auto and the defendant intentionally misappropriated the money by using it or disposing of it in a manner which was inconsistent with the owner's rights.
> 3. The amount of the money exceeded $1000.00.

Smith specifically attacks the sufficiency of the evidence supporting the second element, claiming the State failed to establish he "intentionally misappropriated the money." The jury instructions defined "intentionally" as used in element two of the marshaling instruction to mean "not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind." The instructions defined "misappropriate" to mean "that a person, knowing he has no right or permission to do so, exercises control over the money so that the benefit or value of the money is lost to the owner."

Reviewing the record in the light most favorable to the State, we conclude there is substantial evidence that Smith intentionally misappropriated the cash. First, the dealership's policy did not provide for Smith to hold onto the cash; instead, it should have been placed in the designated safe at the dealership. But Smith, a manager who had worked for the dealership for several years, pocketed the cash anyway. Second, Smith arrived at the party bus wearing a different top and pants from what he wore to work that day. Smith also admitted to a coworker that he had the cash on his person during the party. Consequently, Smith specifically took the cash from his work clothes' pocket and transferred it to his new outfit. Accordingly, we can reasonably infer that Smith acted deliberately when he did not place the cash in the safe and instead put it in his pocket so that he could take it to the party later that evening. Evidence of these acts permitted the jury to conclude that Smith acted intentionally. Smith's subsequent Monday morning comments about messing up, losing the cash, and needing to replace it also permitted the jury to conclude that Smith knew he had no right or permission to exercise control over it and that he did so in a manner that the benefit and value

of the money was lost to the dealership.  So contrary to Smith's claim, the State established Smith "intentionally misappropriated the money."

Smith's conviction is supported by sufficient evidence, and we affirm.

**AFFIRMED.**